UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 11-41-GWU


ANGELA WILLIAMS,                                                    PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities?  If not, a
        finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine
        whether the claimant's severe impairment(s) or combination of

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher

3

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

4

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Angela Williams, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of osteoarthritis, headaches, irritable bowel syndrome, chronic obstructive pulmonary disease, and depression.  (Tr. 71). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 75-78).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were

limited to lifting 10 pounds occasionally and less than 10 pounds frequently, with the ability to walk and stand for two hours in an eight-hour day (no more than 15 minutes at a time), and sit for six hours in an eight-hour day (no more than 30 minutes at a time), and also had the following non-exertional limitations. She: (1) could never crouch, kneel, or crawl; (2) could occasionally climb, balance, and stoop; (3) was limited to pushing and pulling 10 pounds occasionally and less than 10 pounds frequently; (4) needed to avoid chemicals, dust, fumes, temperature extremes, and humidity; (5) should work in a facility with a bathroom available where she could take regular breaks; (6) would miss one or two days of work a month because of headaches and fatigue; and (7) could concentrate and attend for two-hour periods on simple, repetitive tasks and some detailed tasks, could occasionally interact with supervisors, coworkers, and the general public, and had good judgment in work-related activities and ability to adapt to changes. (Tr. 27). The VE responded that there were jobs that such a person could perform and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 28).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there was an error of law. Although the plaintiff did file an application for DIB, her Date Last Insured (DLI) was September 30, 1998 (Tr. 134), and she had been found not disabled in a prior final decision of

6

the Commissioner on April 21, 2003 (Tr. 36-41).  Thus, only her SSI application is currently at issue.

The plaintiff's primary issue on appeal is that the ALJ disregarded the opinion of her treating physician, Dr. Leelamma Varkey.  The defendant maintains that the oversight was harmless.  The court agrees with the plaintiff.

The plaintiff alleged disability due to Crohn's disease, severe back pain, arthritis, and kidney problems.  (Tr. 151).  Extensive medical records show treatment for colitis, ileitis and pyelonephritis.  (E.g., Tr. 233-35).  In addition to problems with her colon and kidneys, the plaintiff's gall bladder was also removed, and she underwent a hysterectomy in 2006.  (Tr. 234-5, 264).  Her gastroenterologist, Dr. P.R. Gowdar, diagnosed inflammatory bowel disease probably secondary to Crohn's disease, in addition to other conditions such as reflux disease and irritable bowel syndrome.  (Tr. 262).  The diagnosis of Crohn's disease was confirmed with a colonoscopy in March, 2007.  (Tr. 256, 258-59).  In October of the same year, the problem became so severe that it caused a near total obstruction of her colon, a large part of which had to be removed.  (Tr. 312-14).  Her treating family physician, Dr. Leelamma Varkey, noted after the surgery that she needed to continue medications for the Crohn's disease (Tr. 490) and she was admitted to the hospital with abdominal pain due to a Crohn's exacerbation early in 2008 (Tr. 549).  However, Dr. Varkey noted that she had not been fully compliant with her medications.  (Tr. 549, 583).  Other medical evidence from after the surgery

shows continued problems with urinary tract infections, headaches, and arthritis, all of which Dr. Varkey prescribed medications for.  (Tr. 498, 542, 551-52, 583).  Dr. Varkey completed a functional capacity assessment on November 2, 2009.  (Tr. 800).  This was three days after the administrative hearing, during which counsel for the plaintiff had noted that his client had an appointment with Dr. Varkey to obtain a functional capacity assessment, and the ALJ, noting that "obviously that's an important record," granted additional time in order to obtain it and even advised that he would extend the time if necessary.  (Tr. 13-14).  However, the hearing decision makes no mention of Dr. Varkey's assessment.  Instead, the ALJ appeared to base his restrictions on his assessment of the plaintiff's daily activities, her testimony, and non-examining sources.  (Tr. 76-77).

Dr. Varkey limited her patient to working two hours a day, standing two hours, sitting four hours, occasionally lifting 10 pounds and frequently lifting 5 pounds, occasionally bending, squatting, crawling, climbing, and reaching above shoulder level, "frequently" manipulating, and noted she would occasionally need to elevate her legs during an eight-hour work day.  (Tr. 800).  She would require the option of sitting or standing "often."  She placed a moderate restriction on driving automotive equipment and mild restrictions on working at unprotected heights, around moving machinery, and around changes in temperature and humidity.  She described her patient's diagnosis as being Crohn's disease with exacerbations, arthritis, chronic

back pain, pyelonephritis, and bronchial asthma, adding that she was in "moderate" pain.  (Id.).

Therefore, Dr. Varkey's sitting and standing restrictions would limit the plaintiff to less than full-time work, even apart from the physician's opinion that she could work only two hours a day.

The Commissioner concedes the plaintiff's point that the ALJ did not even mention Dr. Varkey's restrictions.  He also concedes that Sixth Circuit precedent emphasizes the importance of an ALJ following the procedural requirements of the administrative regulations, in particular 20 C.F.R. § 1527(d)(2).  This section provides that the ALJ must give the opinion of the treating source controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  The regulation goes on to state that the Commissioner "will always give good reasons" for the weight given the treating source opinion.  Id.  The Sixth Circuit noted that the requirement for the reason giving exists in part to give claimants an understanding of the disposition of their cases, especially in situations where a physician has deemed the claimant disabled.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004) (citations omitted).  Remands for consideration of treating physician's opinions are necessary even in cases where the decision is otherwise supported by substantial evidence.

11-41  Angela Williams

However, the defendant asserts that the present set of facts falls under the exception given in Wilson for a treating source opinion that "is so patently deficient that the Commissioner could not possibly credit it." Id. at 547. He notes that in many ways the ALJ's assessment is consistent with Dr. Varkey's, in that the plaintiff is limited to lifting 10 pounds or less, with limited intervals of sitting and standing, and such postural activities as occasional climbing and stooping and never crouching, kneeling, or crawling. She was also restricted from working around dust and fumes, whereas Dr. Varkey found only mild restrictions on changes in temperature and humidity. (Tr. 27, 800). The Commissioner suggests that the remainder of Dr. Varkey's restrictions, such as the limitation to sitting only four hours in an eight-hour day and the need to elevate her legs occasionally, are "patently deficient." The Commissioner asserts that there is nothing in Dr. Varkey's office notes or elsewhere in the record that would support such limitations.

In Bowen v. Commissioner of Social Security, 478 F.3d 742, 747 (6th Cir. 2007), however, the Sixth Circuit addressed a similar situation in which a treating physician opinion was not mentioned and described it as "plainly [violating] the terms of §1527(d)(2)." The fact that the ALJ adopted fewer restrictions than the treating source without even mentioning the treating source "alone counsels strongly in favor of a remand." Id. at 748. The lack of even a passing reference to the treating physician opinion also precluded the reviewing court from inferring that the ALJ intended to indirectly attack it. Id. at 749.

10

11-41  Angela Williams

The court is not persuaded that the treating physician opinion here is so patently deficient that the ALJ could not credit it.  The sitting limitation, in particular, is not wholly implausible in a person with chronic bowel disease and arthritis. Moreover, the ALJ certainly accepted the fact that the plaintiff would be limited in her ability to sit, since he limited her to sitting a total of six hours a day and only 30 minutes at a time.  (Tr. 75).  It is not too much of a stretch from these restrictions to Dr. Varkey's limitation of four hours of sitting a day with a need to alternate sitting and standing "often."  Accordingly, a remand will be required in order to deal with the treating physician opinion.

For the reasons given in the Commissioner's brief, the plaintiff's arguments regarding the combined effects of her impairments and the durational requirement of substantial gainful activity are without merit.  <u>Commissioner's Motion for Summary Judgment</u>, Docket Entry No. 14, at 11-12.

The decision will be remanded for further consideration.

This the 9th day of February, 2012.



**Signed By:**

<u>**G. Wix Unthank**</u>   *G.W.U.*

**United States Senior Judge**

11